SHELLY & SANDS, INC., APPELLANT, *v.* FRANKLIN COUNTY BOARD OF ELECTIONS ET AL., APPELLEES.

[Cite as Shelly & Sands, Inc. *v.* Franklin Cty. Bd. of Elections (1984), 12 Ohio St. 3d 140.]

(No. 83-1648—Decided July 18, 1984.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. John C. Elam, Mr. George L. Jenkins* and *Mr. David S. Cupps,* for appellant.

*Messrs. Lucas, Prendergast, Albright, Gibson & Newman, Mr. Robert E. Albright* and *Mr. Richard C. Brahm,* for intervening appellees Tigner et al.

*Per Curiam.* The standards for a valid zoning referendum petition have been established by this court in a number of cases. This court has held that the petition must contain an accurate and unambiguous summary of the issue sought to be submitted to the electorate. If the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote. *Markus* v. *Bd. of Elections* (1970), 22 Ohio St. 2d 197 [51 O.O.2d 277]. We hold that the petition here failed to live up to those standards.

Applying the objective test of *Markus* to the facts of this case, we hold that the statement of the zoning referendum was confusing and ambiguous to the average person signing the petition, and would tend to mislead such person.

In an analysis of the petition here, we conclude that it was ambiguous and misleading because it failed to apprise the reader of the present zoning status of the land and of the precise nature of the requested change. In this regard, the summary failed to inform the reader that operation of the entire 105.96 acre tract of land as a commercial sand and gravel quarry would continue, irrespective of the results of the referendum, and that the only zoning change sought by Shelly & Sands was that which would allow the placement of an asphaltic batch plant on a 1.603 acre tract located in the middle of the 105.96 acres used in the sand and gravel quarrying operation.

As noted in the trial court's decision, the summary is misleading because it conveys the idea that, by signing the petition, electors will be given the chance to determine whether Shelly & Sands should continue to use its land for commercial sand and gravel operations. The ambiguity results primarily from the inclusion of language in the summary which states that Shelly & Sands was applying for a change of zoning "* * * for the use in the production of asphaltic concrete and a continuation of sand and gravel quarry operation." There was no reasonable basis to include in the language of the petition any reference to "a continuation of sand and gravel quarry operation." This language did not appear in the resolution adopted by the county commissioners and was conceivably added to mislead those readers who were opposed to the continuing operation of the quarry in any form.

The only zoning change sought by the application related to a change of zoning on the 1.603 acre tract of land located in the middle of the larger tract for the purpose of locating an asphaltic batch plant. Shelly & Sands' right to continue commercial sand and gravel quarry operations on both the 1.603 acre tract and the larger 105.96 acre tract would be unaffected by the results of any election. Thus, the language of the petition conveys the mistaken impression to the voters of the unincorporated area of Hamilton Township that if they objected to sand and gravel operations in their locality, by signing the petition they would have an opportunity to defeat Shelly & Sands' right to continue to operate a commercial sand and gravel quarry.

We hold that the trial court properly concluded that the referendum petition was ambiguous and misleading.

Therefore, the judgment of the court of appeals is reversed.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., and O'NEILL, J., dissent.

O'NEILL, J., of the Seventh Appellate District, sitting for W. BROWN, J.

CELEBREZZE, C.J., dissenting. Unlike the majority, I am unwilling to believe that the so-called average person lacks the ability to comprehend what is, by even the lowest grammatical standards, the unambiguous summary of the proposal which appeared on the instant petitions. In my view, the reasonably intelligent and literate person would not have been misled into believing that the proposed zoning change would affect the entire 105.96 acre tract of land and not solely the 1.603 acre tract. The summary clearly states that the zoning change would affect *only* the 1.603 acre tract. The court of appeals correctly observed that:

"It is clear from the summary that the change of zoning applied only to the 1.603 acres, which was specifically stated to be a portion of the 105.96 acre tract."

The majority latches on to selected language in the summary which allegedly relates to the 105.96 acre tract and thereby concludes that the entire summary was ambiguous. That conclusion does not at all follow. The proposed zoning change related entirely to the 1.603 acre tract *and to no other portion of the land.* Thus, the language "for the use in the production of asphaltic concrete and a continuation of sand and gravel quarry operation" likewise relates to the small tract which would be affected by the zoning change.

Accordingly, I would affirm the judgment of the court of appeals, dissolve the stay, and allow the election to proceed.

O'NEILL, J., concurs in the foregoing dissenting opinion.